JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

SHAMIRA JONES

**(b)** County of Residence of First Listed Plaintiff BURLINGTON, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Miriam S. Edelstein, Costello & Silverman, LLC, 18000 Horizon Way, Ste. 800, Mt. Laurel, NJ 08054,

**DEFENDANTS**

CITY OF PHILADELPHIA; OLUFEMI BELLO; JOHN DOE SUPERVISORS 1-5; JOHN DOES 6-10

County of Residence of First Listed Defendant PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. Section 1983

Brief description of cause:
Substantive due process violations based on sexual assault and sexual harassment by law enforcement officer

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Equitable and moneta

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/20/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:___Philadelphia, PA__________________________________

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| SHAMIRA JONES,<br>Plaintiff,<br>vs.<br><br>CITY OF PHILADELPHIA, et al.<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>NO: |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. **(X)**

| | | |
|---|---|---|
| 10/20/2026<br>**Date** | *s/ Miriam S. Edelstein*<br>**Attorney-at-law** | Plaintiff, Shamira Jones<br>**Attorney for** |
| 856-727-9700<br>**Telephone** | 856-727-9797<br>**FAX Number** | medelstein@costellosilverman.com<br>**E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMIRA JONES,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHILADELPHIA; OFFICER OLUFEMI BELLO; OFFICER MIDDLETON; JOHN DOE SUPERVISORS 1-5; and JOHN DOES 6-10,<br><br>Defendants. | CIVIL ACTION<br><br>DOCKET NO:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>*Electronically filed* |

Plaintiff, Shamira Jones, residing in Moorestown, New Jersey, by way of Complaint against the Defendants, says:

## Preliminary Statement

Plaintiff brings this action against the defendants pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for sexual harassment, including sexual assault, and failure to train, supervise, screen and/or discipline in violation of Plaintiff's substantive due process rights, and for common law claims of assault and battery. Plaintiff seeks compensatory damages, economic damages, punitive damages and an equitable order from the Court requiring the defendants to refrain from engaging in the unlawful conduct outlined above.

## Jurisdiction

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 with respect to the federal civil rights claims brought herein pursuant to 42 U.S.C. § 1983 and the United States Constitution.

2. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 with respect to the claims of assault and battery brought herein pursuant to Pennsylvania state common law.

**Venue**

3. All claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involved Defendants who reside within the jurisdictional limits.

4. Venue is accordingly invoked pursuant to 28 U.S.C. § 1391(b)-(c).

**Identification of Parties**

5. Plaintiff Shamira Jones ("Plaintiff") is, at all relevant times herein, an adult individual residing in the State of New Jersey.

6. Defendant City of Philadelphia is (the "City"), at all relevant times herein, a municipality existing pursuant to the laws of the Commonwealth of Pennsylvania with its principal place of business located within Philadelphia County, Pennsylvania, and responsible for the policies, practices and customs of the City of Philadelphia Police Department (the "PPD").

7. Defendant Olufemi Bello ("Bello") is, at all relevant times herein, an adult individual and a police officer employed by the PPD residing in Philadelphia, Pennsylvania.

8. Defendants John Doe Supervisors 1-5 (the "Doe Supervisors"), currently unidentified, are, at all times relevant herein, current or former supervisory employees and/or officials of the City whose names are not yet known to Plaintiff and counsel who were responsible for the promulgation, training and enforcement of the City's policies, practices and customs governing conduct of law enforcement officers ("LEOs") within the PPD, including

with respect to reporting, investigating and prevention of foreseeable sexual misconduct, assault and harassment by LEOs.

9. Defendants John Does 6-10 (the "Doe Defendants"), currently unidentified, are individuals and/or entities who, on the basis of their direct acts, are answerable to the plaintiff for the acts set forth herein.

**General Allegations**

10. On or about the evening of November 23, 2025, Plaintiff entered a Wawa convenience store located at 150 S. Independence Mall West, Philadelphia, Pennsylvania, 19106.

11. As Plaintiff entered the store, she passed by Defendant Bello wearing his PPD uniform.

12. Defendant Bello appeared to be stationed on duty at that location.

13. Defendant Bello made eye contact with Plaintiff as she entered the store.

14. After Plaintiff selected her products to purchase, she began to approach the counter to pay for her items.

15. Plaintiff noticed that Defendant Bello had left his apparent post outside the store and was following behind her through the store, staring at her.

16. When Plaintiff reached the counter, Defendant Bello stopped as well and stood close to her, continuing to stare at her.

17. Plaintiff became uncomfortable and asked Defendant Bello if everything was "ok" and why he was staring at her.

18. Defendant Bello responded that everything was fine, but continued to stand there, staring at her.

19. After Plaintiff completed her purchase, she exited the store.

20. Defendant Bello again followed Plaintiff as she exited the store.

21. Once outside, Defendant Bello commented on Plaintiff's appearance, telling her that she was pretty and had a nice body.

22. Defendant Bello asked for Plaintiff's telephone number.

23. Plaintiff knew Defendant Bello was flirting with her, but felt compelled to exchange numbers with him at his request, given the inherent power dynamics at play with a uniformed PPD officer.

24. Shortly after Plaintiff departed after providing her number to Defendant Bello, Defendant Bello texted Plaintiff, identifying himself as "Femi" and commented "Fine ass".

25. Defendant Bello further messaged Plaintiff instructing her to send him photos of herself and that he would send some of his to Plaintiff "outside of this uniform lol".

26. Plaintiff asked Defendant Bello why he was interested in her and paying her all this attention.

27. Defendant Bello responded that he was "very physically attracted" to Plaintiff, specifying her "face and body".

28. Defendant Bello further texted Plaintiff, "A reason? Aha easy, you walked in.. Automatically had me walking behind you, I had to get ya attentions. You got a vibe, that my life is missing rn.. so I'm not letting that slip".

29. Plaintiff felt compelled to respond to Defendant Bello and thank him, fearing some kind of retribution if she was not friendly toward his unsolicited advances.

30. Plaintiff returned to the Wawa about an hour later with her sister who needed something else from the store.

31. When Plaintiff entered the store, Defendant Bello was still there but was speaking with a man who appeared to be homeless outside of the store.

32. When Plaintiff exited the store, Defendant Bello ended his interaction with the homeless man and asked Plaintiff to meet Defendant Bello at the side of the building.

33. Plaintiff made sure to stay in full view of her sister who was parked in the car, waiting for Plaintiff, and approached Defendant Bello.

34. As Plaintiff approached, Defendant Bello looked around as if to see whether anyone was watching.

35. Defendant Bello asked Plaintiff for a hug.

36. Plaintiff asked Defendant Bello if his body cam was on, and Defendant Bello said no.

37. Plaintiff was even more scared, believing that officers were supposed to keep their body cams on when interacting with the public.

38. Plaintiff again felt compelled to comply with Defendant Bello's request, but during the hug, Defendant Bello grabbed and started caressing Plaintiff's buttocks.

39. Plaintiff stepped back in surprise and tried to disengage from Defendant Bello, but Defendant Bello asked her for another hug.

40. Plaintiff was scared and did not feel she could safely refuse, and acquiesced again to a hug.

41. Again, during this second hug, Defendant Bello held Plaintiff tightly keeping her in place while he grabbed her buttocks again.

42. At that point, Plaintiff's sister yelled from the car window at Defendant Bello that he was "taking things too far" and that she did not care about Defendant Bello's badge or gun.

43. Plaintiff's sister threatened to report Defendant Bello and that he should pay for their food.

44. Plaintiff physically extracted herself from Defendant Bello and went to her sister's car, and they drove away.

45. As they were driving away, Defendant Bello texted Plaintiff again and asked where they were going to get food so he could send her money.

46. Plaintiff told him Defendant Bello that he could send money to an Apple Pay account.

47. Defendant Bello then sent $50 to the Apple Pay account, and texted Plaintiff, "I sent it lol & don't think I'm a sucker too lol, I wouldn't have, cuz ya sister damn near fucked it all up! lol but you look too good, I'll take care of ya fine ass".

48. Defendant Bello further texted Plaintiff regarding Plaintiff's sister, "tell her don't do that shit no more lol this ain't Jersey dawg" and "she lucky I'm on duty, I would have been right at her".

49. The following day, Defendant Bello kept texting Plaintiff, and Plaintiff asked him why he had grabbed her buttocks.

50. Defendant Bello claimed that the first time was "actually a mistake" and then claimed he had asked her the second time, but stated "my bad if you didn't like it lol".

51. Plaintiff clarified that Defendant Bello had asked her for a hug, and she had only complied because he's a cop and she was nervous and scared, that she had even asked if his body cam was on and was surprised that it was not, and then even more surprised and scared when he grabbed her buttocks.

52. Defendant Bello replied that he had no idea she was scared, and again claimed that he had asked the second time he grabbed her buttocks but that the first time was a mistake and that he had "no business doing that".

53. Plaintiff told Defendant Bello that she was definitely scare and "didn't know what to expect if I told you no," and stated that she was scared of cops.

54. Defendant Bello replied, "lol I ain't that kind of cop.. lol I'm cool", that he was was not trying to scare Plaintiff and argued that the "first think I said to you was a compliment lol how are you scared of a nigga complimenting you? So you didn't wanna hug me, but you did it cuz you were scared?"

55. Plaintiff told him as a cop Defendant Bello should have known not to do this, that she gets compliments all the time but rarely gives hugs and "never get my butt rubbed on".

56. Defendant Bello again told Plaintiff that she "definitely could have said no" and he would have understood, and told Plaintiff to "take the job out of it," that Defendant Bello "came at" her because he found her attractive, not because he had a uniform on, and thought they were "vibing".

57. Defendant Bello then asked her out for dinner, which Plaintiff did not accept and stopped responding to Defendant Bello's text messages.

58. On or about December 8, 2025, Plaintiff reported Defendant Bello's misconduct at the 9th District Police Station.

59. Plaintiff was directed to Internal Affairs, and provided a written statement.

60. Plaintiff was later contacted by Sgt. Sudler, Badge No. 452, who met with Plaintiff on or about December 22, 2025 at 7790 Dungan Rd. to record her statement.

61. Sgt. Sudler advised Plaintiff that the PPD had obtained surveillance footage from the Wawa location and that Defendant Bello had been placed on "desk duty" pending the investigation.

62. Throughout 2026, both Plaintiff and her counsel made multiple attempts to obtain copies of any paperwork, reports or any other information regarding Plaintiff's complaint regarding Defendant Bello, even a copy of Plaintiff's initial statement, but to no avail.

63. In or around May 2026, Sgt. Sudler advised Plaintiff that she would be receiving paperwork regarding Defendant Bello's disciplinary hearing, but Plaintiff never received anything.

64. In or around June 2026, Sgt. Sudler advised Plaintiff that the investigation was complete and that disciplinary paperwork was in process, but that it required 4-5 additional signatures and review.

65. In or around early August 2026, Plaintiff requested a status update regarding Defendant Bello's alleged disciplinary hearing.

66. Sgt. Sudler advised Plaintiff that everything was completed on his end, but that for the "final stage" the forms required three (3) signatures, and that only two (2) had been obtained.

67. Sgt. Sudler advised that the paperwork was still missing the final signature from the police commissioner, and only then could records be distributed per Plaintiff's and her counsel's office's requests.

68. Sgt. Sudler advised that this could take 1-2 more months.

69. In or around early September 2026, Plaintiff spoke with another representative in the Internal Affairs division (name unknown) who advised Plaintiff that Defendant Bello's disciplinary hearing had not been scheduled yet.

70. This Internal Affairs representative further advised Plaintiff that the scheduling of the disciplinary hearing could take up to two (2) more years and that no records would be released before that occurred.

71. Plaintiff was further advised that charges of sexual assault and misconduct against Defendant Bello had been substantiated on May 24, 2026.

**_*Monell* and Supervisor Allegations_**

72. Plaintiff repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

73. The City's inaction and failure to take prompt, reasonable, effective measures to prevent sexual misconduct, assault and harassment by LEOs, particularly involving women of color, as it has here, is well-documented.

74. By way of illustrative example only:

a. In August 2019, former PPD Commissioner Richard Ross resigned amid allegations of gender and racial discrimination, including sexual harassment, within the PPD, with then-Mayor Jim Kenney issuing a statement that he did not believe former Commissioner Ross and the PPD had "taken the necessary actions to address the underlying cultural issues that too often negatively impact women – especially women of color."

b. In December 2021, the Philadelphia Sheriff's Office hired Michael Paige, a former PPD officer, as a Deputy Chief, despite Paige having been terminated from the PPD for sexual assault.

c. In May 2022, two (2) former female officers, Officer Jennifer Allen and Cpl. Audra McCowan, obtained a gender discrimination and sexual harassment verdict against the City based on allegations not only of sexually harassing comments, unwelcome sexual advances and non-consensual touching, but also of supervisors ignoring such allegations when reported.

d. In June 2022, former Detective Philip Nordo was convicted of rape, sexual assault, stalking and official oppression, among other charges, at which time the Philadelphia District Attorney's Office (the "DAO") stated that "as early as 2005 . . . the DAO was provided with very strong evidence of sexual misconduct by Nordo . . . ."

e. In September 2022, former PPD Officer Patrick Heron was arrested on a "slew of offenses related to unlawful sexual contact with young girls, photography depicting sex acts with young girls, and retaliation and harassment against victims and witnesses, eventually entering into a plea agreement on more than 200 charges for sexual misconduct stretching back to 2005, with the prosecutor identifying 48 victims and noting that more victims likely have not come forward, noting that Heron had threatened these victims with arrest, and stating, "We know there are more victims."

f. In February 2023, former Detective Donald Suchinsky was arrested on charges of harassment, indecent assault and stalking, with then-PPD Commissioner Outlaw admitting that the PPD had been aware of criminal allegations against Det. Suchinsky since February 2021.

g. In March 2023, former School Resource Officer Howard Rubin was charged with crimes of sexual misconduct with minors, despite allegations of misconduct having been made against the former officer for his conduct while assigned to at least three (3) different schools and as early as 2008.

h. In February 2025, a PPD officer brought a federal lawsuit against the City for sexual harassment and retaliation in employment, as well as a § 1983 claim against his supervisor, a Captain with the PPD, alleging the Captain had sexually harassed the officer as well as bragged that he, the Captain, was "untouchable" due to his close relationship with former Deputy Police Commissioner Robin Wimberly, who was the head of the Professional Standards division at the PPD.

75. In recognition of the long-documented need to address a rampant culture of sexual harassment within the PPD, the PPD hired its first Chief Diversity, Equity and Inclusion Officer in April 2022, Leslie Marant, but the PPD terminated Marant less than two (2) years later in January 2024 claiming the termination was due to "restructuring."

76. In Marant's October 2025 lawsuit, however, she alleges that her termination was retaliation for her efforts to investigate and reform the widespread culture of sexual harassment and discrimination, including:

a. During a sexual harassment training, observing male Commanders comment that “it is only harassment if you look like Forrest Gump, but if you are cute then it is a date;”

b. Observing male Commanders engaging in a lengthy discussion of retribution female officers should receive if they make a “fake” claim of harassment;

c. Observing a practice of labeling female officers who complain of sex discrimination as “problems;”

d. Being rebuffed in her efforts to take corrective action in response to a complaint by a female officer of sexual discrimination and harassment by an Executive Team member;

e. Documenting and objecting to rampant sexual and sexist comments by male PPD employees; and

f. Despite the City’s asserted explanation of “restructuring” to justify her termination, Marant was the only person terminated in this alleged restructuring.

77. As the illustrative facts above show, the PPD has maintained and continues to maintain a custom or practice of permitting rampant sexual harassment committed by LEOs through both actual notice and awareness of this pervasive culture and engaging in either tacit approval or deliberate and reckless indifference to same by failing to take prompt, remedial, reasonable and effective actions to address it.

78. Plaintiff, as an African-American woman, is yet another one of the “women of color” who has been negatively impacted by the PPD’s failure to correct this sexually harassing

culture and to effectively train its LEOs to prevent such harassment from occurring when LEOs interact with the public, in uniform, under color of law.

79. By engaging in the unlawful conduct outlined above, Defendant Bello subjected to Plaintiff to assault and battery, causing Plaintiff to suffer both economic and emotional harm.

80. By engaging in the unlawful conduct outlined above, Defendant Bello violated Plaintiff’s substantive due process rights secured by the Fourteenth Amendment, including her right to bodily integrity and autonomy and equal protection on the basis of sex.

81. By maintaining the aforementioned custom and/or practice of permitting rampant and widespread sexual harassment by LEOs, including Defendant Bello’s sexual assault and harassment of Plaintiff, the City violated Plaintiff’s substantive due process rights secured by the Fourteenth Amendment, including her right to bodily integrity and autonomy and equal protection on the basis of sex.

82. The City’s custom and/or practice of permitting the type of sexual harassment Plaintiff suffered resulted in Defendant Bello’s sexual assault and harassment of Plaintiff, causing Plaintiff both economic and emotional harm.

83. By failing to train, supervise, screen and/or discipline its LEOs, including Defendant Bello, for prohibited and unlawful sexual harassment, including Defendant Bello’s sexual assault and harassment of Plaintiff, the Doe Supervisors violated Plaintiff’s substantive due process rights secured by the Fourteenth Amendment, including her right to bodily integrity and autonomy and equal protection on the basis of sex.

84. The Doe Supervisors’ failure to train, supervise, screen and/or discipline its LEOs, including Defendant Bello, resulted in Defendant Bello’s sexual assault and harassment of Plaintiff, causing Plaintiff both economic and emotional harm.

85. Because Defendants' actions and/or omissions were especially egregious, and because they were either engaged in by members of upper management, or members of upper management were willfully indifferent to their employees' unlawful activity, punitive damages are warranted.

## COUNT I

**<u>42 U.S.C. § 1983 – Substantive Due Process Violations</u>**
***Against the Defendant City and Defendant Bello***

86. Plaintiff hereby repeats and re-alleges all preceding paragraphs as though fully set forth herein.

87. As set forth above, the Defendant City and Defendant Bello violated Plaintiff's substantive due process rights secured by the Fourteenth Amendment of the United States Constitution to her bodily integrity and autonomy and for equal protection on the basis of sex, causing Plaintiff harm.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering, economic damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

## COUNT II

**<u>42 U.S.C. § 1983 – Failure to Train, Supervise, Screen and/or Discipline</u>**
***Against the Defendant Doe Supervisors***

88. Plaintiff hereby repeats and re-alleges all preceding paragraphs as though fully set forth herein.

89. As set forth above, the Defendant Doe Supervisors violated Plaintiff's substantive due process rights secured by the Fourteenth Amendment of the United States Constitution to her

bodily integrity and autonomy and for equal protection on the basis of sex, causing Plaintiff harm.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering, economic damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

## COUNT III

## Pennsylvania Common Law - Assault and Battery
***Against Defendant Bello***

90. Plaintiff hereby repeats and re-alleges all preceding paragraphs as though fully set forth herein.

91. As set forth above, Defendant Bello subjected Plaintiff to unwanted, non-consensual touching and the reasonable apprehension thereof, causing Plaintiff harm.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering, economic damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

## Request for Declaratory and Equitable Relief

92. Plaintiff hereby repeats and re-alleges all preceding paragraphs as though fully set forth herein.

93. In addition to the relief requested above, Plaintiff requests the following declaratory and equitable relief:

a. Plaintiff requests a declaration by this Court that the practices contested herein violate federal law and the United States Constitution as set forth herein;

b. Plaintiff requests that this Court order Defendants to cease and desist in engaging in the unlawful conduct alleged herein going forward, both as to the specific Plaintiff and as to all others similarly situated;

c. Plaintiff requests that the Court equitably order Defendants to pay all costs incurred by Plaintiff and/or her attorneys in connection with this litigation and all of Plaintiff's reasonable attorneys' fees along with statutory and required enhancements to said attorneys' fees;

d. Plaintiff requests that the Court order the Defendants to modify all existing policies, practices, customs and procedures, and/or all other written statements describing any policy upon which Defendants' above actions were allegedly based to prohibit the unlawful practices contended herein, within 30 days of such order;

e. Plaintiff requests that the Court order the Defendants to undergo and to have all PPD personnel and agents thereof who interact with civilians in any capacity on behalf of the PPD to undergo sexual harassment training specifically focused on interactions with civilians and to furnish proof thereof to the Court within 60 days of such order, and thereafter annual training, and to require that this training be conducted by an independent consultant(s) with specific expertise in sexual harassment in the context of interactions with law enforcement and who is/are not otherwise employed by or in any way contractual relationship with Defendants; and

f. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages including emotional pain and suffering,

economic damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

**COSTELLO & SILVERMAN, LLC**

Dated: October 20, 2026

**By: *_/s/ Miriam S. Edelstein____***
Miriam S. Edelstein
PA Attorney I.D. No. 204557
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
(856) 727-9700 (tel.)
(856) 727-9797 (fax)
medelstein@costellosilverman.com
*Attorneys for Plaintiff*

**DEMAND FOR A TRIAL BY JURY**

Plaintiff, by and through her above signed counsel, hereby demands, pursuant to rule 38(b) over the Federal rules of civil procedure, a trial by jury on all counts in the above – caption action.

**COSTELLO & MAINS, LLC**

**By: *_/s/ Miriam S. Edelstein__***
**Miriam S. Edelstein**